IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

JASON L.,

               Plaintiff,

   v.

ANDREW M. SAUL, Commissioner of Social Security,

               Defendant.

Civil Action No.
3:19-CV-0976 (DEP)

---

APPEARANCES:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM
Attorneys at Law
1500 Main Street
Endicott, NY 13761

FOR DEFENDANT

HON. GRANT C. JAQUITH
United States Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

OF COUNSEL:

PETER A. GORTON, ESQ.

CANDACE LAWRENCE, ESQ.
Special Assistant U.S. Attorney

ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on August 3, 2020, during a telephone conference conducted on the record. At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:   August 11, 2020
         Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JASON L.,

                    Plaintiff,

vs.                                              3:19-CV-976

ANDREW SAUL, Commissioner
of Social Security,

                    Defendant.

------------------------------------------------------------x
```

*DECISION* - August 3, 2020

HONORABLE DAVID E. PEEBLES

United States Magistrate Judge, Presiding

APPEARANCES (by telephone)

```
For Plaintiff:     LACHMAN, GORTON LAW FIRM
                   Attorneys at Law
                   1500 East Main Street
                   Endicott, NY 13761
                     BY:  PETER A. GORTON, ESQ.

For Defendant:     SOCIAL SECURITY ADMINISTRATION
                   15 New Sudbury Street
                   Boston, MA 02203
                     BY:  CANDACE LAWRENCE, ESQ.
```

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1           THE COURT:  Let me begin by thanking counsel for
2    their excellent and succinct presentations, both written and
3    orally.  I found this to be an interesting case.
4           The plaintiff has commenced this proceeding
5    pursuant to 42, United States Code, Sections 405(g) and
6    1383(c)(3) to challenge a determination by the Commissioner
7    of Social Security finding that plaintiff was not disabled at
8    the relevant times; therefore, ineligible for the benefits
9    which he sought.
10          The background is as follows.  The plaintiff was
11   born in February of 1979.  He is currently 41 years old.  He
12   was 33 years of age at the time of the alleged onset of his
13   disability in June of 2012, and 39 years old at the time the
14   Administrative Law Judge rendered a decision in this case.
15   Plaintiff stands 5-foot, 11-inches in height and weighs
16   between 195 and 208 pounds, depending on the reference in the
17   record.
18          Plaintiff is divorced.  He lives in a trailer in
19   Endicott, New York, with his mother, father, and son, who was
20   17 years old at the time of the hearing in this matter, July
21   of 2018.  For a period of time, including in May of 2017, he
22   lived in a shelter, having had difficulties in the home
23   setting.
24          Plaintiff is right-handed.  He obtained a GED in
25   1999.  He finished eleventh grade, and while in school was in

1  regular non-special education classes.  Plaintiff did not at
2  the time of the hearing have a driver's license; it had been
3  suspended due to his driving while intoxicated conviction,
4  but it appears that he may have obtained his license back.
5         Plaintiff stopped working in June of 2012.  The
6  evidence is conflicting as to the reason for stopping.  He
7  testified that he quit due to anxiety and panic attacks; he
8  had a conflict with the manager.  However, he told an
9  evaluator at the Addiction Center for Broome County, at
10 page 250, that he quit to care for his mother.
11         Plaintiff was employed at National Pipe and
12 Plastics in 2003 where he made pipes and drove a forklift.
13 He was a charter bus cleaner from April 2005 to December
14 2006; a janitor from December 2006 to June of 2007; an oil
15 changer from September 2007 to October 2007.  He was a
16 factory worker at Shop Vac from January 2008 to
17 November 2008.  Thereafter, there is a significant gap where
18 he testified at page 38 that he did not work.  He was a sub
19 maker in March of 2012 until he stopped working in June of
20 2012.
21         Physically, plaintiff suffers from some
22 impairments; RLS, acid reflux, hypertension.
23         Mentally, he suffers from anxiety disorder,
24 depressive disorder, panic disorder without agoraphobia,
25 panic attacks.  Although, according to LCSW Olsen in her

letter he no longer experiences panic attacks.  He suffers from alcohol dependence in early remission.  There is evidence that he attempted suicide in or about September 2016, slitting his wrists after a breakup.  He was also hospitalized at Wilson Hospital for detoxification in 2007.  He has undergone inpatient treatment at New Horizons for alcohol abuse and outpatient treatment at the Addiction Center of Broome County, or ACBC.  The outpatient treatment appears to have been commenced in August of 2015 where there was a referral from a Maine Town court.  He was discharged for noncompliance from that program in March of 2016.  There was also a relapse in November of 2015 while engaged in that program when he was arrested and convicted for driving while intoxicated.

The testimony and evidence is equivocal as to when plaintiff was drinking and when he maintained a period of sobriety.  He testified he drank on and off in 2016 and 2017, which the records support; he stopped drinking in April of 2017 but drank on June 30, 2017.  He re-entered rehabilitation with ACBC in 2017.  He testified that he has been sober since December of 2017.  The plaintiff has been prescribed and is currently on Gabapentin, Valium, Wellbutrin, Nexium.  In the past he has also been prescribed Zoloft, Celexa, Remeron, Cymbalta, Disteril, Mirapex, Diazepam, Omeprazole, Atenolol, Tenormin.  He uses Effexor,

1   Prozac and Albuterol inhaler.
2           In terms of activities of daily living, plaintiff
3   is capable of bathing, grooming, dressing, does some
4   shopping, cooks, including for his son, can wash dishes, do
5   laundry, clean, takes trash to the landfill, does yard work.
6   He is active on social media, watches television.  He listens
7   to music.  He volunteers at the EPAC Arts Center, supports
8   his disabled mother, and he enjoys watching wrestling.
9           The plaintiff had a fight with his son and was
10  convicted of harassment, and I am trying to piece together
11  the records, that may have been the reason for the referral
12  by the Town of Maine court.  He has used marijuana since age
13  18 and still does approximately two times per week.  He has
14  consumed alcohol since his early twenties, at one point he
15  pinpointed that at age 22 for his first drink.  Plaintiff is
16  also a heavy smoker; he smokes ten to twenty cigarettes per
17  day and has for twenty years.
18          Procedurally, plaintiff applied for Title II and
19  Title XVI benefits under the Social Security Act on
20  February 11, 2016.  In his application he alleged an onset
21  date of June 1, 2012, and claimed disability based on
22  insomnia, anxiety, depression and alcohol addiction.  A
23  hearing was conducted by Administrative Law Judge Robert A.
24  Lynch on July 10, 2018 to address plaintiff's application.
25  On September 14, 2018, Administrative Law Judge, or ALJ,

Lynch issued an unfavorable decision which became a final determination of the Agency on June 26, 2019, when the Social Security Administration Appeals Council denied plaintiff's application for review of that decision.

This action was commenced on August 8, 2019, and is timely. In his decision, ALJ Lynch applied the familiar five-step test for determining disability and the modification called for in cases of drug and alcohol dependency or abuse. He first went to the analysis considering all of plaintiff's impairments, including his alcohol abuse. He found plaintiff had not engaged in substantial gainful activity since June 1, 2012.

At step two, he concluded that plaintiff suffers from severe impairments, including affective disorders, including unspecified depressive disorder and persistent depressive disorder; anxiety disorders variously described as unspecified anxiety disorder and generalized anxiety disorder; panic disorder without agoraphobia; personality disorder with dependent, narcissistic, and antisocial traits; post-traumatic stress disorder; and alcohol abuse, early remission.

At step three, ALJ Lynch concluded that plaintiff's conditions do not meet or medically equal any of the listed presumptively disabling conditions set forth in the Commissioner's regulations, specifically considering listings

1   12.04, 12.06, 12.08 and 12.15.
2              The ALJ next concluded that regardless of
3   notwithstanding his impairments, plaintiff retains the
4   residual functional capacity, or RFC, to perform work at all
5   exertional levels, but limited the work requirements based on
6   the mental impairments noted, and significantly included that
7   when abusing substances, the claimant cannot consistently
8   complete a forty hour workweek due either to absences or
9   being off task for 16 percent or more of the day or needing
10  to leave work early.
11             At step four, considering the effects of
12  plaintiff's alcohol abuse, the ALJ concluded that plaintiff
13  is unable to perform his past relevant work.
14             And at step five, concluded that there is no work
15  available in the national or local economy that plaintiff is
16  capable of performing given the RFC.
17             The Administrative Law Judge then went back to
18  consider what, if any, effects the alcohol abuse had on
19  plaintiff's residual functional capacity and whether it was
20  material to that finding.  He found at step two that
21  plaintiff would still suffer from all of the mental
22  impairments noted in the prior analysis with the exception of
23  the alcohol abuse.
24             At step three, he concluded that plaintiff would
25  still not meet or medically equal any of the listed

1   presumptively disabling conditions.  The RFC finding, absent
2   the effects of alcohol abuse, were similar to those
3   previously found with the notable exception that it was no
4   longer found that when abusing substances, the claimant
5   cannot consistently complete a forty hour workweek due to
6   either absences or being off task for 16 percent or more per
7   day or needing to leave work early.
8           At step four, the Administrative Law Judge
9   concluded that if plaintiff stopped drinking alcohol and
10  abusing alcohol, he could work in one of his past relevant
11  positions as a Commercial Cleaner and Cleaner II based on
12  testimony of a vocational expert.
13          Alternatively, ALJ Lynch proceeded to step five and
14  found that, according to the testimony of a vocational
15  expert, plaintiff could also work in other available
16  positions, including as a stubber, an automotive detailer,
17  and a spiral binder, and, therefore, is not disabled at the
18  relevant times.  And specifically found that plaintiff's
19  alcohol abuse was a contributing factor material to
20  determining disability.
21          As you know, my task is limited.  The test that the
22  Court must apply is exceedingly deferential.  The Court must
23  determine whether correct legal principles were applied and
24  the resulting determination is supported by substantial
25  evidence.

1           Substantial evidence is an exacting standard.  It
2    is even more stringent than the clearly erroneous standard
3    that attorneys are well familiar with.  The Court noted in
4    *Brault versus Social Security Administration,* 683 F.3d 443,
5    the substantial evidence standard means once an ALJ finds a
6    fact, that fact can be rejected only if a reasonable
7    factfinder would have to conclude otherwise.
8           In this case plaintiff raises two contentions.  The
9    first is that the residual functional capacity finding
10   without the effects of alcohol is not supported by any
11   medical evidence.  And the second is a challenge on step
12   five, and it's two-pronged.  The first challenge is the
13   vocational expert's job numbers since he used numbers for
14   broad OES categories that contain many positions besides
15   those that were identified that plaintiff could perform.  And
16   also concluded that the step five determination is not
17   supported and the Commissioner did not carry his burden at
18   step five because the hypothetical is based on a flawed
19   residual functional capacity.
20          The backdrop, of course, is that it is plaintiff's
21   burden to establish disability through step four, including
22   at the residual functional capacity step under *Poupore*.  This
23   is a case involving potential substance abuse.  When there is
24   medical evidence of an applicant's drug or alcohol abuse, the
25   disability inquiry does not end with a step five analysis.

1   *Cage versus Commissioner of Social Security*, 692 F.3d, 118,
2   that's at page 123 pincite (Second Circuit 2012.)
3            Under the Contract with America Advancement Act
4   adopted by Congress in 1996, it provides that, "An individual
5   shall not be considered to be disabled if alcoholism or drug
6   addiction would be a contributing factor material to the
7   Commissioner's determination that the individual is
8   disabled."  That also appears under 42, United States Code,
9   Section 1382c(a)(3)(J), as well as in the regulations at 20
10  CFR Section 416.935.
11           The critical question then is whether the claimant
12  would be found disabled if he stopped using drugs or alcohol.
13  The burden, of course, of demonstrating that substance abuse
14  is not a contributing factor material to the disability
15  determination rests with the claimant.
16           In this case there are, as the Commissioner noted,
17  four medical opinions in the record.  The first is from
18  Dr. Mary Ann Moore, a psychologist, who examined the
19  plaintiff one time on May 11, 2016.  Interestingly, the
20  plaintiff told the examining psychologist that he was in an
21  outpatient program at the ACBC from August of 2015 to May of
22  2016, and that he recently completed the program.  That's at
23  340.  We know, of course, that he was actually discharged
24  from the program in March of 2016 for noncompliance.
25           It is questionable.  I agree with plaintiff that we

1  shouldn't draw any adverse inferences, but part of the
2  problem in this case for both the Administrative Law Judge
3  and the Court, quite frankly, is it has been difficult to
4  pinpoint plaintiff's periods of sobriety and he suffers from
5  some credibility issues in that regard.
6           In her medical source statement, Dr. Moore stated
7  the following, "Claimant shows no evidence of limitation with
8  regard to following and understanding simple directions and
9  instructions, performing simple tasks independently.  Mild
10 limitation with regard to maintaining attention and
11 concentration, learning new tasks, performing complex tasks
12 independently.  Moderate limitation with regard to
13 appropriately dealing with stress.  Moderate to marked
14 limitation with regard to relating adequately with others,
15 making appropriate decisions, and maintaining a regular
16 schedule."
17          The Administrative Law Judge indicated that the
18 opinion should be given substantial weight except with
19 respect to the opinion about relating to others, making
20 appropriate decisions and maintaining a regular schedule.
21 The remaining limitations are accounted for in plaintiff's
22 residual functional capacity pursuant to the Administrative
23 Law Judge.  Again, it was noted that one of the issues is
24 that it relies on plaintiff's statement that he maintained
25 sobriety since November of 2015.

1         The second opinion comes by way of a letter from
2  Nan, or Nancy, Olsen, Licensed Clinical Social Worker.  It is
3  not dated.  It appears at 346 to 347 of the record.  It is
4  attributed, according to the index to the Administrative
5  Transcript, to a date of June 14, 2016.  Again, it's unclear
6  as to whether this was a period of sobriety.  But, in any
7  event, the opinion given in this letter includes the
8  following:  It notes, "His fear of groups and lack of
9  transportation has kept him from attending AA meetings, and
10 he has struggled to find ways to earn money to pay a fine
11 from his DUI due to his fear of entering new situations.  In
12 spite of this, Jason did manage to pay the fine, and will
13 regain the ability to drive at the end of this year.  He
14 spends his days helping his parents with chores and cooking,
15 but states that he continues to have difficulty leaving the
16 house.  He no longer has panic attacks, but does continue to
17 experience anxiety sufficient to interfere with normal
18 activities, particularly in social settings."  The
19 Administrative Law Judge did not give weight to this letter,
20 although does rely on it to support his ultimate finding at
21 page 25 with regard to the materiality issue.
22        The third is from Physician Assistant Susan
23 Anderson.  It is dated June 18, 2018.  And, significantly, it
24 opines that plaintiff would be off task less than 15 percent
25 but absent two days per month.

1      And the fourth is from non-examining psychologist
2  Dr. S. Bhutwala, who rendered an opinion on May 13, 2016
3  based upon a review of the records.  Dr. Bhutwala did note
4  moderate limitations in the ability to perform activities
5  within a schedule, maintain regular attendance, and be
6  punctual within customary tolerances.  That's at page 82.
7  And moderate limitation in the ability to complete a normal
8  workday and workweek without interruptions from
9  psychologically based symptoms and to perform at a consistent
10 pace without an unreasonable number and length of rest
11 periods.
12     In his mental RFC opinion, Dr. Bhutwala concludes
13 that plaintiff is capable of performing unskilled low contact
14 work.  The Administrative Law Judge afforded Dr. Bhutwala's
15 opinion substantial weight when not using alcohol, at page 19
16 and 20.  Dr. Bhutwala's opinions do support the residual
17 functional capacity.
18     I have carefully reviewed all of the available
19 records in this case, and I agree with the Commissioner that
20 in the periods that we know for certain plaintiff has
21 maintained sobriety, it shows that his depression and anxiety
22 improved and were controlled with medications.  Under the
23 Second Circuit's decision in *Smith v. Berryhill*, 740 F. App'x
24 721, from the Second Circuit, June 29, 2018, this is a
25 relevant consideration and can provide support.

1　　　　Administrative Law Judge Lynch discussed those
2　records extensively at 17 through 20 and 24 through 25 of his
3　decision.  Two of the records, for example, are from
4　Physician Assistant Anderson, whose treatment notes are
5　fairly normal.  For example, in August of 2015, a time of
6　abstinence, at page 303, the records are relatively benign
7　concerning plaintiff's psychological issues.  Again, in
8　September 2015, while he is in treatment and before his
9　November 2015 relapse, at page 331, again they're benign.
10　And other records from periods of known sobriety support
11　that.
12　　　　The consideration of and comparison of treatment
13　records during periods of sobriety versus periods of abuse is
14　a relevant consideration under *Roe versus Colvin*, a decision
15　from one of my colleagues, reported at 2016 WL 547760
16　(Northern District of New York September 29, 2016).
17　　　　So, the bottom line is after carefully reviewing
18　the medical records and the Administrative Law Judge's
19　decision and knowing that there is considerable confusion as
20　to when plaintiff was and was not abusing alcohol, I find
21　that the plaintiff has failed to prove that no reasonable
22　factfinder could conclude as the Administrative Law Judge
23　that alcohol abuse was material for the finding of
24　disability.  The determination then, the residual functional
25　capacity is supported by substantial evidence.

1       Turning to step five, clearly there is an admitted
2  error.  The vocational expert in this case did rely on OES
3  numbers, and did not get the granular analysis required of
4  the jobs and titles cited that fall within those OES broad
5  categories.  That error is harmless, however, as the
6  Commissioner has pointed out, because the finding at step
7  four, the plaintiff is capable based on his residual
8  functional capacity absent the effects of alcohol of
9  performing his job of past relevant work as a Commercial
10 Cleaner and Cleaner II, both as generally performed and as
11 actually performed by him.  Therefore, the finding at step
12 four is supported by substantial evidence and any error at
13 step five is harmless.
14      As to the second prong of the step five argument,
15 because I found the residual functional capacity is supported
16 by substantial evidence, the hypothetical posed to the
17 vocational expert was proper and the vocational expert's
18 testimony was sufficient to carry the Commissioner's burden
19 at step five.
20      In conclusion, I find that the determination
21 resulted from the proper consideration of legal principles
22 and is supported by substantial evidence.  I will grant
23 judgment on the pleadings to the defendant and order
24 dismissal of plaintiff's complaint.
25      Thank you both for excellent presentations.  I hope

1  you stay safe in these interesting, trying times.
2              *              *              *
3
4                   C E R T I F I C A T I O N
5
6       I, EILEEN MCDONOUGH, RPR, CRR, Federal Official
7  Realtime Court Reporter, in and for the United States
8  District Court for the Northern District of New York,
9  do hereby certify that pursuant to Section 753, Title 28,
10 United States Code, that the foregoing is a true and correct
11 transcript of the stenographically reported proceedings held
12 in the above-entitled matter and that the transcript page
13 format is in conformance with the regulations of the
14 Judicial Conference of the United States.
15
16
17
18                              _____
19                              EILEEN MCDONOUGH, RPR, CRR
                                Federal Official Court Reporter
20
21
22
23
24
25